# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA

KILOTON TACTICAL, *et al.*,

       *Plaintiffs*,

  v.

BUREAU OF ALCOHOL,
TOBACCO, FIREARMS AND
EXPLOSIVES, *et al.*,

       *Defendants.*

No. 3:23-cv-23985-MCR-ZCB

## <u>DEFENDANTS' SECOND MOTION TO DISMISS</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION..................................................................................................1

BACKGROUND..................................................................................................1

   I.   Statutory and Regulatory Background...................................................1

   II.  This Litigation.........................................................................................3

ARGUMENT........................................................................................................7

   I.   Plaintiffs' challenge to a prior administration's now-repealed enforcement policy should be dismissed as moot...........................................7

   II.  No mootness exception applies................................................................9

CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Al Najjar v. Ashcroft,*
  273 F.3d 1330 (11th Cir. 2001) ................................................................13-14

*Already, LLC v. Nike, Inc.,*
  568 U.S. 85 (2013) ............................................................................... 8

*Arizonans for Off. Eng. v. Arizona,*
  520 U.S. 43 (1997) ............................................................................... 7

*Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletics Ass'n, Inc.,*
  115 F.4th 1266 (11th Cir. 2024) ........................................................... 9

*Chafin v. Chafin,*
  568 U.S. 165 (2013) ............................................................................. 8

*Church of Scientology of Cal. v. United States,*
  506 U.S. 9 (1992) ................................................................................ 8

*Del Monte Fresh Produce Co. v. United States,*
  570 F.3d 316 (D.C. Cir. 2009) ............................................................. 14

*FBI v. Fikre,*
  601 U.S. 234 (2024) ............................................................................. 8

*Gun Owners of Am., Inc. v. U.S. Dep't of Justice,*
  157 F.4th 834 (6th Cir. 2025) ...........................................................7, 14

*Keohane v. Fla. Dep't of Corr. Sec'y,*
  952 F.3d 1257 (11th Cir. 2020) .......................................................9, 10, 11

*Kiloton Tactical, LLC v. ATF,*
  2024 WL 1235543 (N.D. Fla. Feb. 13, 2024) ....................................... 5

*Lewis v. Cont'l Bank Corp.,*
  494 U.S. 472 (1990) ............................................................................. 14

*Ohio v. EPA,*
    969 F.3d 306 (6th Cir. 2020) ...................................................................... 10

*Resurrection Sch. v. Hertel,*
    35 F.4th 524 (6th Cir. 2022) ..............................................................10, 13

*Spencer v. Kemna,*
    523 U.S. 1 (1998) ...................................................................................... 13

*Troiano v. Supervisor of Elections in Palm Beach Cty.,*
    382 F.3d 1276 (11th Cir. 2004) ......................................................1, 9, 15

*United States v. Sanchez-Gomez,*
    584 U.S. 381 (2018) .................................................................................... 7

*Wood v. Raffensperger,*
    981 F.3d 1307 (11th Cir. 2020) ................................................................. 9

## STATUTES

18 U.S.C. § 921 .............................................................................................. 1

18 U.S.C. § 923 .............................................................................................. 2

18 U.S.C. §§ 922(t), 923(g) ........................................................................... 2

## REGULATIONS

27 C.F.R. §§ 478.73(b), 478.74, 478.76.......................................................... 2

28 C.F.R. § 0.130(a).......................................................................................... 2

## ADMINISTRATIVE AND EXECUTIVE MATERIALS

President Donald J. Trump,
    *Presidential Actions: Protecting Second Amendment Rights* (Feb. 7, 2025),
    https://perma.cc/3274-ALLR................................................................5, 8

ATF,
    ATF O 5370. 1H,
    *Federal Firearms Administrative Action Policy and Procedures* (May 6, 2025),
    https://perma.cc/Z49Z-GSD6.................................................................... 6

ATF,
    *Firearms Compliance Inspections*, https://perma.cc/AY7F-WUNG.................................2

ATF,
    Press Release, *DOJ, ATF Repeal FFL Inspection Policy and Begin Review of Two Final
    Rules* (Apr. 7, 2025), https://perma.cc/CM36-QA3D (Press Release)......................6

ATF,
    *Revocation of Firearms Licenses*, https://perma.cc/9FTZ-JG48.......................................2

**INTRODUCTION**

Plaintiffs—a federal firearms licensee and an association purporting to represent federal firearms licensees—originally brought suit to challenge the Bureau of Alcohol, Tobacco, Firearms and Explosives' ("ATF") enhanced regulatory enforcement policy or "zero-tolerance" policy, adopted in 2021. Under that policy, ATF would generally seek to revoke a federal firearms license the first time that a licensee willfully committed certain violations of federal law.

Following the 2025 change in presidential administration, however, ATF repealed the zero-tolerance policy and replaced it with a new policy that bears no resemblance to its predecessor. "When government laws or policies have been challenged, the Supreme Court has held almost uniformly that cessation of the challenged behavior moots the suit." *Troiano v. Supervisor of Elections in Palm Beach Cty.*, 382 F.3d 1276, 1283 (11th Cir. 2004) (citing cases). Because the challenged policy has been unambiguously repealed, and no longer has any effect, Plaintiffs lack a legally cognizable interest in the continuation of this action. This case should be dismissed as moot.

**BACKGROUND**

**I.    Statutory and Regulatory Background**

The Gun Control Act of 1968 ("GCA"), 18 U.S.C. § 921 *et seq.*, establishes that "[n]o person shall engage in the business of importing, manufacturing, or dealing in firearms . . . until he has filed an application with and received a license to do so from

the Attorney General." *Id.* § 923(a). To obtain and maintain such a license, federal firearms licensees ("FFLs") must conduct certain background checks, keep detailed and accurate records, and report the theft or loss of any firearms from their inventories, among other requirements. *See* 18 U.S.C. §§ 922(t), 923(g).

Under the GCA, the Attorney General has authority to approve and revoke federal firearms licenses. As relevant here, the Attorney General "may, after notice and opportunity for hearing, revoke any license . . . if the holder of such license has willfully violated any provision of this chapter or any rule or regulation prescribed by the Attorney General." *Id.* § 923(e). The Attorney General has delegated this authority to ATF. 28 C.F.R. § 0.130(a). Consistent with that delegation, ATF periodically inspects FFLs to ensure that they are complying with the GCA's requirements and to educate FFLs about their obligations. 18 U.S.C. § 923(g); ATF, *Firearms Compliance Inspections*, https://perma.cc/AY7F-WUNG. If ATF initiates license-revocation proceedings, an FFL can request an administrative hearing, *see* 18 U.S.C. § 923(f)(2); 27 C.F.R. §§ 478.73(b), 478.74, 478.76; ATF, *Revocation of Firearms Licenses*, https://perma.cc/9FTZ-JG48, and if the hearing results in a final notice of revocation, the FFL can seek de novo review in district court, 18 U.S.C. § 923(f)(3).

In 2021, the Department of Justice announced a new GCA enforcement policy designed to establish "zero tolerance for willful violations of the law by federally licensed firearms dealers." The White House, *Fact Sheet: Biden-Harris Administration Announces Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety*

(June 23, 2021), https://perma.cc/ZFK7-8RRN (Fact Sheet) (emphasis omitted). Under the policy, "[a]bsent extraordinary circumstances," ATF would seek "to revoke the licenses of dealers the first time that they violate federal law by willfully" committing certain violations of the GCA—specifically, by "1) transferring a firearm to a prohibited person, 2) failing to run a required background check, 3) falsifying records, such as a firearms transaction form, 4) failing to respond to an ATF tracing request, or 5) refusing to permit ATF to conduct an inspection in violation of the law." Fact Sheet. ATF updated its internal guidance document, referred to in this litigation as the Administrative Action Policy (or "AAP"), to reflect the new enforcement policy. ATF did so first with AAP version ATF-O-5370.1E, but subsequently updated the AAP twice (versions ATF-O-5370.1F, *see* ECF No. 43-2, and ATF-O-5370.1G, *see* ECF No. 63-1) without repealing the policy.

## II.    This Litigation

Plaintiff Kiloton Tactical LLC ("Kiloton") is an FFL that holds a Type 07 Manufacturer License issued in 2016. Compl. ¶ 4, ECF No. 1. ATF conducted a compliance inspection of Kiloton between May and early June 2022. *Id.* ¶¶ 164-65. That inspection uncovered multiple violations of the GCA, *see* Compl. Ex. 11, ECF No. 1-11, twenty-four of which ATF found to be potentially willful, *see* Compl. Ex. 1 at 2-7, ECF No. 1-1. Those violations consisted of: (1) five instances where Kiloton failed to conduct proper background checks; (2) five instances where Kiloton failed to timely report a sale of multiple handguns to a single purchaser; (3) thirteen instances where

Kiloton sold handguns to purchasers without complying with Florida's mandatory three-day waiting period; and (4) one instance where Kiloton recorded the same background check approval number on two separate ATF forms involving handgun sales to different purchasers and was unable to reconcile to which sale the background check applied. *See id.*

In April 2023, Kiloton filed an application to renew its federal firearms license. *See id.* at 2. On July 10, 2023, ATF sent Kiloton a "Notice to Deny Application for License," *id.* at 1, with an accompanying letter explaining that, "[b]ased on the results" of the 2022 inspection, ATF was "contemplating denying [Kiloton's] renewal application" and had "decided to initiate the denial/revocation process," Compl. Ex. 2 at 1, ECF No. 1-2. ATF notified Kiloton that it could request an administrative hearing to contest this initial denial decision. *Id.* at 1-2. Kiloton did so, and also separately filed this lawsuit and sought emergency relief via a motion to preliminarily enjoin both ATF's then-pending notice of denial of Kiloton's renewal application and ATF's AAP itself. *See* ECF No. 15-1 at 35.

On November 8, 2023, the parties conducted an administrative hearing, and on November 28, 2023, ATF sent Kiloton a letter stating that "[a]fter review of the evidence introduced at the hearing," it had "determined not to issue a Final Notice of Denial" as to Kiloton's license renewal. ECF No. 28-1. Kiloton's firearms license was then renewed until July 2026. ECF No. 28. Subsequently, this Court denied Plaintiffs' preliminary injunction motion on February 13, 2024, concluding that "Plaintiffs'

request for an injunction to stop ATF from enforcing the [AAP] as to Kiloton's license" was "moot" in light of ATF's ultimate decision to renew that license, and Plaintiffs had otherwise "failed to adequately show" irreparable harm." *Kiloton Tactical, LLC v. ATF*, 2024 WL 1235543, at *2-*3 (N.D. Fla. Feb. 13, 2024).

On April 4, 2024, Defendants moved to dismiss Plaintiffs' Administrative Procedure Act and Second Amendment challenges to the AAP. *See* ECF No. 43-1. Subsequently, on January 29, 2025, Defendants advised the Court that ATF had updated the operative AAP. ECF No. 63. The Court ordered Plaintiffs to address the impact of the revised policy on their claims including, but not limited to, whether it renders the claims moot. ECF No. 64.

Simultaneously, there was a change in presidential administration, which led to new leadership at the Department of Justice and ATF. Soon after taking office, President Trump issued an executive order directing a review of firearms-related matters. *See* President Donald J. Trump, *Presidential Actions: Protecting Second Amendment Rights* (Feb. 7, 2025), https://perma.cc/3274-ALLR. The executive order directed the Attorney General to review "[a]gencies' plans, orders, and actions regarding the so-called 'enhanced regulatory enforcement policy' pertaining to firearms and/or Federal firearms licensees." *Id.* § 2(b)(iii). Defendants filed a consent motion to stay this matter while the Attorney General was conducting her review, *see* ECF No. 65, which this Court granted, ECF No. 67.

Following the Attorney General's review, ATF repealed the zero-tolerance policy. ATF, Press Release, *DOJ, ATF Repeal FFL Inspection Policy and Begin Review of Two Final Rules* (Apr. 7, 2025), https://perma.cc/CM36-QA3D (Press Release). The agency explained that the "Enhanced Regulatory Enforcement Policy, aka the Zero Tolerance Policy, . . . set more stringent criteria for Industry Operations compliance inspections to identify licensees with certain qualifying violations." *Id.* ATF stated that "[a]s of today, this policy will be repealed, and Industry Operations inspections will no longer be held to these previously set guidelines." *Id.*

Soon after repealing the zero-tolerance policy that Plaintiffs challenge here, ATF adopted a new and different policy, which it implemented through another version of the AAP. *See* ATF, ATF-O-5370.1H, *Federal Firearms Administrative Action Policy and Procedures* (May 6, 2025), https://perma.cc/Z49Z-GSD6. Instead of establishing a "zero tolerance" standard for certain violations, the new policy requires a "fact-specific analysis." *Id.* § 6(a). In particular, the policy recognizes that "[s]ome violations may be repetitive, yet accidental, and not inconsistent with public safety." *Id.* § 6(b). It explains, for example, that "[r]epeat non-willful errors (particularly those involving paperwork) may occur, even by a conscientious licensee." *Id.* § 7(a)(1)(b). It accordingly permits ATF officials to initiate license revocation proceedings only "if all elements of the violation, including the relevant *mens rea*, are established and it is appropriate under the circumstances." *Id.* § 6(b).

## ARGUMENT

This case should be dismissed as moot. In general, a case becomes moot once the court may no longer grant effectual relief to the prevailing party. And here, ATF repealed the enforcement policy challenged in this case and replaced it with a new and different policy. Therefore, ATF's previous policy no longer has any effect, and this suit is moot.

### I. Plaintiffs' challenge to a prior administration's now-repealed enforcement policy should be dismissed as moot.

ATF has repealed the enforcement policy that Plaintiffs challenge, and in doing so, has concluded that "zero tolerance" should not be the enforcement policy going forward. Plaintiffs' case should therefore be dismissed as moot. *See, e.g., Gun Owners of Am., Inc. v. U.S. Dep't of Justice*, 157 F.4th 834, 838 (6th Cir. 2025) ("Because both [ATF's] 2020 advisory and the policy it implemented are no longer live, [this] lawsuit is not either.").

The Constitution limits the federal courts' jurisdiction to resolving "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "[A]n actual controversy must be extant at all stages of review[.]" *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (quotation omitted). Thus, a "case that becomes moot at any point during the proceedings is 'no longer a "Case" or "Controversy" for purposes of Article III,' and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385-86 (2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).

A case has become moot when "the parties lack a legally cognizable interest in [its] outcome." *Already*, 568 U.S. at 91 (quotation omitted). That is true if an intervening event "makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (citation omitted). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already*, 568 U.S. at 91 (citation omitted).

As explained, ATF has now reconsidered the zero-tolerance enforcement policy challenged in this case. Following the change in administration, the Department of Justice and ATF conducted a review of various firearms-related policies, including the zero-tolerance policy. *See* President Donald J. Trump, *Presidential Actions: Protecting Second Amendment Rights* (Feb. 7, 2025), https://perma.cc/3274-ALLR. In the wake of that review, ATF "repealed" the zero-tolerance policy, *see* Press Release, and adopted a new and different policy that "supersedes" its predecessor, *see* ATF-O-5370.1H. Because the zero-tolerance policy no longer has any effect, Plaintiffs have received "all the relief [they] might have won in [the courtroom]" and this case is therefore moot. *FBI v. Fikre*, 601 U.S. 234, 240 (2024); *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (explaining case becomes moot when a court cannot "grant any effectual relief whatever to the prevailing party").

## II.    No mootness exception applies.

In rare circumstances, two exceptions to the mootness doctrine may permit a court to continue exercising jurisdiction over a case even where the challenged conduct has ceased. *First*, a defendant's voluntary cessation of challenged conduct may not moot a case where there is a "reasonable expectation" or "substantial likelihood" that a "government defendant will reverse course and reenact the repealed [policy]." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1267 (11th Cir. 2020) (citation omitted). *Second*, a dispute may not be moot where it is "capable of repetition yet evading review." *Wood v. Raffensperger*, 981 F.3d 1307, 1317 (11th Cir. 2020) (citation omitted). Neither exception to the usual rule applies in this case.

*Voluntary Cessation.* "The basis for the voluntary-cessation exception is the commonsense concern that a defendant might willingly change its behavior in the hope of avoiding a lawsuit but then, having done so, return to [its] old ways." *Keohane*, 952 F.3d at 1267 (alteration in original) (citation omitted). Government defendants have "more leeway than private parties" in this context though, *id.*, and can "often" demonstrate mootness "by formally rescinding a challenged policy." *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletics Ass'n, Inc.*, 115 F.4th 1266, 1284 (11th Cir. 2024); *see also Keohane*, 952 F.3d at 1268 (explaining government actors are "unlikely to resume" challenged conduct, especially when they have "formally rescinded a challenged statute, ordinance, rule, or policy"); *Troiano*, 382 F.3d at 1283 ("When government laws or policies have been challenged, the Supreme Court has held almost uniformly that

cessation of the challenged behavior moots the suit." (citing cases)). "As a result, once the repeal of [a policy] has caused … jurisdiction to be questioned, the plaintiff bears the burden of presenting affirmative evidence that [its] challenge is no longer moot." *Keohane*, 952 F.3d at 1268 (first alteration in original) (citation modified).

The "key inquiry" in determining whether the plaintiff has carried that burden "is whether the plaintiff has shown a reasonable expectation—or . . . a substantial likelihood—that the government defendant will reverse course and reenact the repealed rule." *Keohane*, 952 F.3d at 1268 (citation modified). For this standard to be satisfied, "there must be a fair prospect that the conduct will recur in the foreseeable future," *Ohio v. EPA*, 969 F.3d 306, 310 (6th Cir. 2020), and the potential recurrence would need to be "similar enough" to the challenged conduct "to present substantially the same legal controversy" as the original suit, *Resurrection Sch. v. Hertel*, 35 F.4th 524, 529 (6th Cir. 2022) (quotation omitted). The Eleventh Circuit has also looked to "three broad factors" in "determining whether a plaintiff has shouldered its burden": (1) "whether the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate … jurisdiction"; (2) "whether the government's decision to terminate the challenged conduct was unambiguous"; and (3) "whether the government has consistently maintained its commitment to the new policy." *Keohane*, 952 F.3d at 1268 (citation omitted).

Multiple features of this case make clear that the voluntary cessation exception to mootness does not apply. To start, ATF did not reverse the zero-tolerance policy in

response to this lawsuit. Indeed, it had no tactical incentive to do so, when ATF had prevailed in opposing Plaintiffs' motion for a preliminary injunction. *See* Order, ECF No. 30. Instead, ATF repealed the zero-tolerance policy years after Plaintiffs filed this case, after a change in administration, after the President directed the Attorney General to conduct a review of firearms-related regulations, during which ATF reconsidered multiple policies, not just the policy at issue here. Given this context, there is a well-founded basis for the Court to conclude that ATF's cessation of the challenged conduct is genuine, a "result of substantial deliberation," and not merely "an attempt to manipulate jurisdiction[.]" *Keohane*, 952 F.3d at 1269 (citation omitted). Second, ATF could not have been clearer that it was unambiguously repealing the zero-tolerance policy. Among other things, the agency issued a press release announcing that as of April 7, 2025, "this policy will be repealed, and Industry Operations inspections will no longer be held to these previously set guidelines." Press Release. And third, the new administration has given no indication whatsoever that it intends to revive the zero-tolerance policy.

That ATF is unlikely to reinstate the policy is especially apparent given that the agency has adopted a superseding policy expressly disclaiming what Plaintiffs identify as the zero-tolerance policy's key features. In this case, Plaintiffs argue that the zero-tolerance policy established a "strict liability" enforcement regime under which even marginal, technical, or harmless violations by FFLs would trigger license-revocation proceedings. *See* Compl. ¶¶ 348, 354. The new enforcement policy repudiates any such

approach: It requires a "fact-specific analysis," recognizes that "[s]ome violations may be repetitive, yet accidental, and not inconsistent with public safety," and permits license revocation proceedings only "after a first inspection if all elements of the violation, including the relevant *mens rea*, are established and it is appropriate under the circumstances." ATF-O-5370.1H § 6(a), (b). Under these circumstances, there is no reasonable prospect that the zero-tolerance policy will be reinstated.

In addition, even if ATF were, at some point in the future, to adopt a policy bearing some resemblance to the zero-tolerance policy, that hypothetical future action likely would not present substantially the same legal controversy. The parties' previous motion to dismiss briefing focused in significant part on whether the guidance document reflecting the policy constitutes final agency action subject to review under the Administrative Procedure Act. *See* Defs.' Mot. to Dismiss at 24-29, ECF No. 29; Pls.' Resp. in Opp. to Defs.' Mot. to Dismiss at 25-31, ECF No. 49. In analyzing that issue, a court would consider the form and content of the policy, as well as its development and implementation by the agency. But there is no reason to conclude that a hypothetical future policy would mirror the now-repealed zero-tolerance policy in any of those respects. Instead, any future policy would necessarily arise in different factual circumstances, be justified on the basis of a different administrative record, and may be implemented in many different ways, resulting in a materially distinct APA analysis. Other relevant factors are likewise subject to change. For example, Kiloton's standing argument is mainly premised on the fact that they were subject to (now

terminated) license-revocation proceedings under the zero-tolerance policy as it was implemented in 2022, a fact that would presumably not support standing to challenge a hypothetical policy issued years after those proceedings. It is thus unlikely that a future dispute would present the same controversy as this case.

Accordingly, the voluntary cessation exception to mootness does not apply.

*Capable of Repetition.* This dispute is also not subject to the exception from mootness for cases that are capable of repetition yet evading review. That "doctrine applies only in exceptional situations, where the following two circumstances are simultaneously present": first, there must be "a reasonable expectation that the same complaining party [will] be subject to the same action again"; and second, the challenged action must be "in its duration too short to be fully litigated prior to cessation or expiration[.]" *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (alteration in original) (quotation and citation omitted). This case fails to satisfy either condition.

For largely the same reasons that the voluntary cessation exception is inapposite, there is no reasonable expectation that Plaintiffs will be subject to the same challenged action again. *Resurrection Sch.*, 35 F.4th at 530. The context and substance of ATF's new enforcement policy makes clear that ATF is not likely to reverse itself in the near future. And regardless, the challenged policy "was a product of" specific circumstances and administrative priorities, and "plaintiffs' objections to it are grounded in the [policy's] particulars." *Id.* This Court is thus "unlikely to see this [dispute] in a similar form again." *Id.* (citation omitted); *see also Al Najjar v. Ashcroft*, 273 F.3d 1330, 1340 (11th Cir. 2001)

(explaining courts may not "hypothesize whether circumstances will eventually require" a dispute to be resolved and the "mere possibility that this may happen cannot justify the exercise of jurisdiction").

And in any event, ATF's decision to replace the zero-tolerance policy with a new enforcement policy is not "the sort of action which, by reason of the inherently short duration of the opportunity for remedy, is likely forever to evad[e] review." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990) (alteration in original) (quotation and citation omitted). ATF's decisions in this area do not come with any inherent expiration date, and there is every reason to believe that, in the ordinary case, there would be "ample time" to obtain judicial review" of any subsequent enforcement policy, *id.* at 482.

This case illustrates the point. ATF issued the zero-tolerance policy in 2021, and it remained in effect for nearly four years—more than enough time to fully litigate a challenge to the policy. *See Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009) (indicating that agency actions of over two years duration are generally not capable of evading review). There is thus no likelihood that any future enforcement policy or enforcement decision would evade review. *See also Gun Owners of Am.*, 157 F.4th at 839 ("Even if ATF reissued an advisory substantially similar to the 2020 one, the federal courts would be fully capable of providing effective relief[,]" as "[n]othing stands in the way of courts resolving challenges like this one before they become moot.").

\*\*\*

14

The Eleventh Circuit "has consistently held that a challenge to a government policy that has been unambiguously terminated will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated," and in the "absence of any such evidence, there is simply no point in allowing the suit to continue[.]" *Troiano*, 382 F.3d at 1285. That is the case here. There is no point in permitting Plaintiffs to continue this action, and this Court lacks jurisdiction to consider the merits of their claims.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and dismiss this case for lack of jurisdiction.

Dated: December 9, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Taylor Pitz*
TAYLOR PITZ
(CA Bar No. 332080)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 305-5200
Email: Taylor.N.Pitz@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF WORD LIMIT

I certify that this motion includes 3,648 words as calculated by Microsoft Word.

/s/ Taylor Pitz
TAYLOR PITZ
Trial Attorney
U.S. Department of Justice

## CERTIFICATE OF SERVICE

On December 9, 2025, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Florida, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Taylor Pitz
TAYLOR PITZ
Trial Attorney
U.S. Department of Justice